IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA R. RANKIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 09-180 Erie |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Plaintiff Tina R. Rankin ("Rankin") commenced the instant action pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. For the reasons that follow, the Commissioner's motion will be denied and Rankin's motion will be granted only to the extent she seeks a remand for further consideration.

### I. PROCEDURAL HISTORY

Rankin protectively applied for SSI benefits on May 15, 2007, alleging disability as of July 1, 1993. (AR 104). The application was administratively denied on August 3, 2007. (AR 41, 47). Rankin responded on September 20, 2007, by filing a timely request for an administrative hearing. (AR 53). On February 12, 2009, a hearing was held before Administrative Law Judge O. Price Dodson (the "ALJ").[1] (AR 17). Rankin, who was assisted by a lay representative, appeared and testified at the hearing.[2] (AR 19-32). Testimony was also taken from Julie Schaefer ("Schaefer"), Rankin's support coordinator from Erie County Care

---

[1] The hearing was apparently conducted by means of an electronic connection apparatus. Although Rankin appeared in Erie, Pennsylvania, the ALJ presided over the hearing from Norfolk, Virginia. (AR 8, 17).

[2] It is permissible for non-attorneys to represent claimants in administrative proceedings conducted by the Social Security Administration. 42 U.S.C. § 406(a)(1).

1

Management ("ECCM"), and Robert D. Edwards ("Edwards"), an impartial vocational expert. (AR 32-36). In a decision dated April 10, 2009, the ALJ determined that Rankin was not "disabled" within the meaning of the Act. (AR 5-16). The Appeals Council denied Rankin's request for review on May 14, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case. (AR 1). Rankin commenced this action on July 15, 2009, seeking judicial review of the Commissioner's decision. (Doc. No. 1). Rankin and the Commissioner filed motions for summary judgment on December 30, 2009, and February 22, 2010, respectively. (Doc. Nos. 8 & 10). These motions are the subject of this memorandum opinion.

## II. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or

2

she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative agency's determination is sought, the

agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

### III. THE ALJ'S DECISION

In his decision, the ALJ determined that Rankin had not engaged in substantial gainful activity since her alleged onset date. (AR 10). Rankin was found to be suffering from a learning disability, which was deemed to be "severe" within the meaning of 20 C.F.R. § 416.920(a)(4)(ii). (AR 10). The ALJ concluded that Rankin's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). (AR 11-13).

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Rankin's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but within the world of unskilled work, the claimant is limited to no more than simple repetitive tasks.

(AR 13). Rankin was born on January 24, 1985, making her twenty-four years old as of the date of the ALJ's decision. (AR 14, 20). She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c). Her level of education was deemed to be

"marginal," since she had completed high school in a special education program. (AR 14); 20 C.F.R. § 416.964(b)(2). Rankin was able to orally communicate in English, but she had no past relevant work experience. (AR 14). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Rankin could work as a laundry worker, cleaner or hand packer. (AR 15). Edwards' testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B). (AR 35).

## IV. BACKGROUND

Although there is some ambiguity in the record concerning Rankin's educational history, it appears that she transferred from Garfield Heights High School ("Garfield Heights") in Garfield Heights, Ohio, to Strong Vincent High School ("Strong Vincent") in Erie, Pennsylvania, because she had been bullied during her time at Garfield Heights. (AR 137). After completing her junior year (i.e., the 2002/2003 school year), Rankin withdrew from Strong Vincent and transferred to the Perseus House Charter School of Excellence, Inc. ("Perseus House"). (AR 20, 134, 136). She graduated from Perseus House in 2004. (AR 362). Rankin started to take adult education classes at the Erie Adult Learning Center on December 17, 2007, but she later withdrew from her classes after being embarrassed by a teacher. (AR 366).

In accordance with the requirements of the Individuals with Disabilities Education Act ("IDEA") [20 U.S.C. § 1400 *et seq.*], Rankin received "specially designed instruction" in the areas of reading, writing, English and mathematics while participating "in the regular curriculum in all other areas." (AR 149). Testing conducted when Rankin was seventeen years old revealed that, on the Wechsler Intelligence Scale for Children ("WISC"), she had a verbal intelligence quotient ("IQ") of 63, a performance IQ of 79, and a full scale IQ of 69. (AR 353). On May 6, 2003, less than four months after her eighteenth birthday, additional testing was conducted. (AR 135-146). This testing revealed that Rankin had a verbal IQ of 66, a performance IQ of 83, and a full scale IQ of 83 on the Wechsler Adult Intelligence Scale III ("WAIS-III"). (AR 139). It was determined that Rankin was functioning at a first- or second-grade level, and that she would be "unable to function" in a curriculum in which academic material was presented at a level higher than that expected in a second-grade setting. (AR 140, 143). A school record reported that Rankin was "unable to read or write." (AR 138).

5

At the hearing, Rankin testified that she could not read a newspaper by herself. (AR 21). She stated that she had tried to apply for a job at a local McDonald's restaurant, but that she had been ridiculed and laughed at because of her inability to read and understand the written application that an individual needed to complete in order to obtain the position. (AR 22). Rankin explained that she would experience a "nervous breakdown" and begin to cry if she were asked to read something while working. (AR 24).

Rankin also has a history of asthma. She controls her symptoms by using an inhaler and a nebulizer. (AR 27-28, 264). She testified that she would sometimes wake up "coughing" and "choking" in the middle of the night. (AR 28). Rankin explained that she sometimes needed to seek treatment at Saint Vincent Health Center ("St. Vincent"), a hospital located in Erie, because of her inability to breathe normally. (AR 31).

In January 2008, Rankin sought treatment at St. Vincent for "right flank pain" and "excessive vaginal discharge." (AR 242). Subsequent testing revealed the she was suffering from kidney stones. In 2008, Rankin underwent three separate surgical procedures designed to destroy or remove kidney stones. (AR 28-29, 242, 261, 288-289, 293, 313). Some of Rankin's treatment notes also indicate that she had been taking medication for bipolar disorder at one point, but that she had stopped using the medication after becoming pregnant. (AR 197). Rankin was treated for a urinary tract infection on December 16, 2008. (AR 381).

## V. Discussion

In support of her motion for summary judgment, Rankin advances two general arguments. First, she contends that the ALJ's residual functional capacity determination was erroneous. (Doc. No. 9 at 10-13). Second, she argues that the ALJ erred in determining that her impairments did not meet or medically equal Listing 12.05C. (Doc. No. 9 at 13-14). Under the Commissioner's regulations, an assessment of a claimant's residual functional capacity is relevant at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. § 416.945(a)(5)(I)-(ii). Where a claimant is deemed to be *per se* disabled at the third step, no residual functional capacity determination is needed. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)(recognizing the third step of the sequential evaluation process as a basis for identifying those claimants whose medical impairments are so severe that they

6

would be found to be disabled regardless of their vocational backgrounds). Therefore, the Court will address Rankin's argument concerning Listing 12.05C before addressing her argument concerning the ALJ's residual functional capacity assessment.

The Listing of Impairments describes impairments which preclude an adult from engaging in substantial gainful activity without regard to his or her age, education or work experience. *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled at the third step of the analysis, a claimant must show that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listed Impairment only if it satisfies *all* of the specified medical criteria contained within the applicable Listing. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only where it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The burden is on the claimant to present evidence in support of his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

Rankin argues that the ALJ erred in determining that her impairments did not meet or medically equal Listing 12.05C. (Doc. No. 9 at 13-14). The language contained in Listing 12.05 provides:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>> OR
>> B. A valid verbal, performance, or full scale IQ of 59 or less;
>> OR
>> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05. As the ALJ correctly noted in his opinion, the record contains no evidence of *per se* disability under the "A" or "B" criteria. (AR 11). At this stage, Rankin advances no argument concerning the "D" criteria. (Doc. No. 9 at 13-14). Therefore, the Court's analysis will be limited to the application of the "C" criteria in this case.

Since Rankin registered verbal IQ scores of 63 and 66 and a full scale IQ score of 69, her impairment satisfied the first criterion of Listing 12.05C. The ALJ determined that the second criterion was not met because Rankin had not presented evidence of "a physical or mental impairment imposing an additional and significant work-related limitation of function." (AR 11). He based this finding on his prior determination that Rankin's learning disability was her only "severe" impairment. (AR 11).

In order to establish that she is "disabled" under the Act, Rankin must demonstrate that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The twelve-month durational requirement applies to *both* a claimant's inability to work *and* the underlying "impairment" that prevents him or her from working. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). The ALJ referred to Rankin's experiences with kidney stones as "brief episodic events" which did not last (and had not been expected to last) for the requisite period of twelve months. (AR 10). He stated that the record contained "no evidence of asthma as a medically determinable impairment during the period [of time] at issue." (AR 11). Although some of Rankin's treatment notes

8

indicated that she had bipolar disorder, the ALJ apparently found it to be "non-severe" because Rankin had failed to provide him with "supportive evidence" and "treatment records" to establish the presence of resulting functional limitations. (AR 11).

At the hearing, Rankin testified that she needed to rely on an inhaler and a nebulizer to control her asthma. (AR 27). She explained that she would frequently wake up "coughing" and "choking" "in the middle of the night." (AR 28). Rankin specifically testified that she had used her inhaler the night before the hearing, after her aunt had awakened her after finding her breathing to be abnormal. (AR 28). She declared that she had sought treatment for asthma-related symptoms on several occasions. (AR 31). On January 9, 2008, Rankin sought treatment at St. Vincent for a severe episode of breathing difficulty. (AR 262-264). The record also indicates that, on May 2, 2002, Rankin was crying because of intense chest pain and an inability to breathe. (AR 208). Rankin also testified that she had experienced asthma-related symptoms as recently as the night before the hearing. (AR 28).

The United States Court of Appeals for the Third Circuit has stated that an administrative law judge "must give serious consideration to a claimant's subjective complaints" even where such complaints "are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). Although Rankin needed to provide objective evidence of a *condition* that could reasonably be expected to produce the symptoms alleged in her testimony, she was not required to produce objective evidence of the symptoms themselves. *Green v. Schweiker*, 749 F.2d 1066, 1070-1071 (3d Cir. 1984). In light of the documentary and testimonial evidence contained in the record, the ALJ's conclusion that there was "no evidence of asthma as a medically determinable impairment during the period [of time] at issue" is not supported by substantial evidence. (AR 11).

Having satisfied the first criterion of Listing 12.05C, Rankin can establish that she is *per se* disabled by demonstrating the existence of "a physical or other mental impairment imposing an additional and significant work-related limitation of function."[3] 20 C.F.R. Part 404, Subpart

---

[3] In this case, the record clearly contains evidence establishing the manifestation of Rankin's impairment before she had reached the age of twenty-two. (AR 139, 352-353). Therefore, the more generalized requirements of Listing 12.05 have been satisfied, and the Court's analysis can be confined to the specific requirements of Listing 12.05C. *Markle v. Barnhart*, 324 F.3d 182, 188-189 (3d Cir. 2003); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d

P, Appendix 1, Listing 12.05C. In determining whether an impairment results in "an additional and significant work-related limitation of function" within the meaning of Listing 12.05C, the Commissioner applies the same standard that is used to determine whether an impairment is "severe" at the second step of the sequential evaluation process. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Markle v. Barnhart*, 324 F.3d 182, 188 (3d Cir. 2003); *Antonetti v. Barnhart*, 399 F.Supp.2d 199, 203-204 (W.D.N.Y. 2005). A "severe" impairment is an impairment which "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Under the Commissioner's regulations, "basic work activities" relate to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). By concluding that Rankin's asthma had not been a "medically determinable impairment" during the relevant period of time, the ALJ improperly forestalled the proper analysis that he was required to engage in for purposes of the second criterion of Listing 12.05C. (AR 11). Consequently, his finding at the third step of the sequential evaluation process that Rankin's impairments did not meet or medically equal Listing 12.05C is not supported by substantial evidence.[4] *Markle*, 324 F.3d at 188.

Rankin also argues that the ALJ erred in determining her residual functional capacity. (Doc. No. 9 at 10-13). The ALJ concluded that Rankin had the residual functional capacity to perform a full range of work "at all exertional levels," provided that such work was "unskilled" and involved only simple, repetitive tasks. (AR 13).

On April 30, 2007, Dr. David Fox ("Dr. Fox"), Rankin's primary care physician, indicated that Rankin was "permanently disabled" due to "illiteracy."[5] (AR 133). Under the Commissioner's regulations, a claimant is deemed to be "illiterate" if he or she "cannot read or

---

Cir. 1992).

[4] On September 26, 2007, a medical review team connected with the Erie County Assistance Office opined that Rankin's impairments were *per se* disabling under Listings 12.02 and 12.05D. (AR 128-130). The ALJ rejected this opinion and provided a detailed explanation for doing so. (AR 11-13). The Court notes that Dr. Douglas Schiller, a nonexamining medical consultant, determined that Rankin did not have the "marked" limitations necessary to establish the existence of a *per se* disability under Listings 12.02 and 12.05D. (AR 188). In her brief, Rankin only makes reference to Listing 12.05C. (Doc. No. 9 at 13). Therefore, the Court's analysis with respect to the third step of the sequential evaluation process is limited to the ALJ's findings concerning Listing 12.05C.

[5] There appears to be another ground listed in support of Dr. Fox's opinion, but it is illegible. (AR 133).

write a simple message." 20 C.F.R. § 416.964(b)(1). The ALJ did not address, however, the issue of Rankin's alleged illiteracy, nor did he explain the basis for his implicit finding that Rankin was literate. The ALJ did, however, determine that Rankin had a "marginal" education. (AR 14). An individual with a marginal education is presumed to have minimal "language skills." 20 C.F.R. § 416.964(b)(2). In his hypothetical question to Edwards, the ALJ merely described Rankin's level of education as "marginal" with no reference to Rankin's literacy (AR 34).

Even an individual with a high school education can be "illiterate" under the Commissioner's regulations. *Diehl v. Barnhart*, 357 F.Supp.2d 804, 824 (E.D.Pa. 2005). It must be acknowledged that the Commissioner's regulations have set a low bar for determining that a claimant is literate. *Glenn v. Secretary of Health & Human Services*, 814 F.2d 387, 391-392 (7th Cir. 1987). In any event, however, the Commissioner is required to support a finding of literacy by reference to the evidentiary record where, as here, the claimant has presented evidence of functional illiteracy. *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987); *Jimmerson v. Apfel*, 111 F.Supp.2d 846, 850 (E.D.Tex. 2000). The Commissioner's regulations do not incorporate an inability to read or write within the definition of the term "marginal education." 20 C.F.R. § 416.964(b)(2). Consequently, it cannot be assumed that the ALJ's hypothetical question to Edwards properly conveyed the nature and severity of Rankin's limitations. (AR 34-35).

At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). To that end, an administrative law judge's hypothetical question must adequately convey to a vocational expert *all* of the claimant's credibly established limitations in order for the vocational expert's answer to that question to constitute "substantial evidence" of the existence of jobs consistent with the claimant's residual functional capacity and vocational profile. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). If a limitation is omitted from the hypothetical question, there is a danger that the vocational expert will identify a job requiring the performance of a task that could not be performed by an individual with the omitted limitation. *Burns v. Barnhart*, 312 F.3d 113,

11

122-124 (3d Cir. 2002).

In light of the foregoing analysis, the ALJ's decision in this case cannot stand. The only remaining question is whether a judicially-ordered award of benefits is warranted, or whether the case should be remanded for further administrative proceedings. An immediate award of benefits is proper only where the evidentiary record has been fully developed, and where the evidence as a whole clearly points in favor of a finding of disability. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). That standard is not met here. The record is devoid of specific findings concerning the effects of Rankin's asthma on her ability to work, since the ALJ erroneously concluded that there was "no evidence of asthma as a medically determinable impairment during the period [of time] at issue." (AR 11). Moreover, the impact of Rankin's reading and writing difficulties on her ability to work was never properly considered during the course of the previous administrative proceedings.[6] These matters should all be addressed by the Commissioner in the first instance. Therefore, the case will remanded to the Commissioner for further administrative proceedings.

## VI. CONCLUSION

The Court expresses no opinion as to whether Rankin can ultimately establish her entitlement to SSI benefits under the Act. In any event, however, the Commissioner must specifically consider whether Rankin's asthma qualifies as a "severe" impairment under the previously-described regulations and case law. If the matter is not resolved at the third step of the process, the Commissioner will need to make specific findings as to the degree of Rankin's impairment relative to her ability to read and write, and, if necessary, incorporate such limitations in the hypothetical to the vocational expert.

Accordingly, the motion for summary judgment filed by the Commissioner will be denied, and the motion for summary judgment filed by Rankin will be granted only to the extent she seeks a remand for further consideration. An appropriate Order follows.

---

[6] The Court expresses no opinion as to extent and severity of Rankin's reading and writing difficulties. This is a matter for the ALJ to resolve in the first instance.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA R. RANKIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil Action No. 09-180 Erie |

## ORDER

AND NOW, this 9th day of August, 2010, for the reasons set forth in the accompanying Memorandum Opinion, IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 8] is GRANTED only to the extent she seeks a remand for further consideration by the Commissioner. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judgment [Doc. No. 10] is DENIED.

The clerk is directed to mark the case closed.

s/Sean J. McLaughlin<br>
United States District Judge

cm: All parties of record.